IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-HC-02100-M-RJ

| | |
|---|---|
| RUBEN FULLER, | ) |
| Petitioner, | ) |
| v. | ) ORDER |
| WARDEN DAVID RICH, | ) |
| Respondent. | ) |

On May 28, 2024, Ruben Fuller ("petitioner"), an inmate at F.C.I. Butner, filed *pro se* a petition seeking a writ of habeas corpus under 28 U.S.C. § 2241. Pet. [D.E. 1] at 7–9 (generally asserting that a Nov. 2023 prison disciplinary hearing at Butner violated his due process rights and seeking expungement of the disciplinary conviction and restoration of his Good Time Credits).

On August 19, 2024, respondent filed a motion for summary judgment, Mot. [D.E. 14], a memorandum [D.E. 15], a statement of facts [D.E. 16], and an appendix [D.E. 17], including the declaration of Federal Bureau of Prisons ("BOP") paralegal specialist Kelly Forbes, [D.E. 17-1], with supporting documents [D.E. 17-2, 17-3]. Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified petitioner about this motion, the response deadline, and the consequences of failing to respond. [D.E. 18].

On September 3, 2024, petitioner filed a self-styled "motion for limited discovery that will allow the *pro se* petitioner [to] answer the respondent's motion for summary judgment filed 19 Aug. 2024 [sic]." Mot. [D.E. 19] (seeking discovery and an extension of time to file a response).

On November 22, 2024, the court denied petitioner's motion for discovery but allowed him an extension of time until December 23, 2024, to respond to the motion for summary judgment. Order [D.E. 20]. Petitioner, however, did not further respond and the time to do so has passed.

Statement of Material Facts:

A party's statement of undisputed material facts is "deemed admitted for purposes of the motion [for summary judgment] unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement." Local Civ. R. 56.1(a)(2); Felton v. Moneysworth Linen Serv., Inc., 295 F. Supp. 3d 595, 597 n.1 (E.D.N.C. 2018); Howard v. Coll. of the Albemarle, 262 F. Supp. 3d 322, 329 n.1 (E.D.N.C. 2017), aff'd, 697 F. App'x 257 (4th Cir 2017) (per curiam) (unpublished); see Fed. R. Civ. P. 56(e)(2).

Respondent's statement of material facts cites the underlying evidence, which the court has reviewed, whereas petitioner has not filed any opposing statement of facts.

Petitioner is serving an aggregate 360-month sentence in the BOP which he is projected to complete on April 16, 2045. Resp't Stmt. Mat. Facts. [D.E. 15] at ¶¶1–2.

On November 8, 2023, F.C.I. Butner Incident Report number 3851203 charged petitioner with the Code 133 prohibited act of possessing drugs or alcohol as to an incident on that date. Id. at ¶¶4–5. Petitioner was provided the report on November 9, 2023. Id. at ¶6. This report:

> was issued following a search of Petitioner's assigned cell on November 8, 2023, and specifically the secured locker assigned to Petitioner, wherein an "unknown white substance" was located inside a Ziplock bag, which was in a pair of sweatpants inside the secured locker. BOP staff completed [Narcotic Identification Kit] NIK testing on the "unknown white substance" and the tests indicated a positive result for Amphetamines.

Id. at ¶7 (internal citations omitted).

On November 14, 2023, this incident report was referred to the Discipline Hearing Office ("DHO") and petitioner was provided copies of the "Notice of Discipline Hearing Before the (DHO)" and "Inmate Rights at Discipline Hearing." Id. at ¶¶8–9. On that date, petitioner

2

requested a staff representative at the upcoming DHO hearing but did not indicate whether he wished to have any witnesses. Id. at 10–11. At the DHO hearing, however, he "elected to waive his requested staff representative" and indicated that he was not requesting witnesses. Id.

On November, 30, 2023, the DHO held a hearing, found petitioner committed the act as charged, and sanctioned him as follows: "disallowance of 41 days of good conduct time; 20 days of disciplinary segregation; and, 6 months loss of commissary privileges." Id. at ¶¶12–13.

On December 20, 2023, petitioner was given a copy of the DHO's final report. Id. at ¶14.

An Amended DHO Report, that "added additional facts to section V, Specific Evidence Relied on to Support Findings," was completed on December 28, 2023, and provided to petitioner on January 4, 2024. Id. at ¶¶ 14–15.

Legal Standard:

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A court reviewing a motion for summary judgment should determine if a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249.

3

In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

Discussion:

Section 2241 empowers the court to grant habeas relief to a prisoner who "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(a), (c).

Petitioner argues that the disciplinary proceeding violated his due process rights because he was not provided a copy of the incident report, denying him the ability to "marshal the facts and to present a defense," and, following the NIK test, "BOP Policy and 28 CFR [sic]" require that the substance be "sent to a lab for testing to confirm" the positive result. See Pet. [D.E. 1] at 8.

When a prisoner's cognizable liberty or property interests are at issue in disciplinary hearings, the prisoner is entitled to limited due process rights including 1) advance written notice of the charges, 2) a hearing before an impartial decision maker, 3) the right to call witnesses and present evidence when it is not inconsistent with institutional safety and concerns, 4) an opportunity for non-attorney representation if the inmate is illiterate or the disciplinary hearing is complex, and 5) a written decision setting forth the evidence relied upon and the reasons for the disciplinary action. See Wolff v. McDonnell, 418 U.S. 539, 563–71 (1974) ("Wolff"). The disciplinary findings also must be supported by "some evidence in the record." Superintendent, Mass. Corr. Inst. Walpole v. Hill, 472 U.S. 445, 454–55 (1985) ("Hill").

Here, Kelly Forbes declares, *inter alia*, that: Forbes reviewed petitioner's claims; Forbes has access to official BOP records including petitioner's; the attached records are "business records of regularly conducted activity" that Forbes is "qualified to authenticate"; Forbes certifies that the attached records "(1) were made at or near the time of the occurrence or the matters set forth by,

4

or from information transmitted by, a person with knowledge of those matters," "(2) were kept in the course of regularly conducted activity," and "(3) were made by the regularly conducted activity as a regular practice." Resp't App., Forbes Decl. [D.E. 17-1] at ¶¶1–3.

Forbes further declares: On November 8, 2023, Incident Report Number 3581203 charged petitioner with violation of BOP disciplinary code 113 – possess drugs/alcohol. Id. at 6. This incident report was delivered to petitioner on that date and stated:

> On November 8, 2023, at approximately 1015 Hrs. I Senior Correctional Officer J. Carlton recovered Multiple white unknown Substances a secure locker in Cell W03-131. The locker contained an Identification card and Medicine bottles containing Inmate Fuller, Ruben Reg# 26740-017 information. The Unknown White substance was inside a Ziplock bag, which was in sweatpants inside the secure locker. The Unknown substance was turned over to Lt. Ball along with Chain of Custody form. At approximately 11:40 am I was advised that Lt. M. Ball completed NIK testing on the unknown substance with the following results:
>
> Using NIK test kit A[,] the white unknown substance turned the test an orange to tan color, directing me to NIK test kit U.
>
> Using NIK test kit U[,] the white unknown substance turned the test a burgundy color, directing me to NIK test kit W.
>
> Using NIK test kit W[,] the white unknown substance turned the test an olive color which indicated a positive result for Amphetamines and directs me to stop the testing . . . .

Id. at ¶6.

During the investigation, petitioner "was advised of his right to remain silent at all stages of the discipline process." Id. at ¶7. "Petitioner informed the investigator that he understood his rights and chose not to make a statement," and he chose not to request witnesses. Id. at ¶¶7, 8.

"On November 14, 2023, the Unit Discipline Committee ('UDC') referred the report to the Discipline Hearing Officer ('DHO') due to the seriousness of the report." Id. at ¶9. At the UDC

5

hearing, petitioner stated, "It was not mine," and he "was given a Notice of Discipline Hearing before the DHO and was advised of his rights at the hearing," including, *inter alia*, to get a written copy of charges at least 24 hours before the hearing, to have a staff representative, to call witnesses on his behalf, to present documentary evidence, to give a statement or remain silent, to be present throughout the hearing, and to receive the DHO's decision and disposition in writing. Id. at ¶¶9, 10. He "acknowledged being advised of these rights," "requested to have a staff representative assigned to his hearing," but "did not indicate whether he wished to call any witnesses." Id.

On November 30, 2023, in his DHO hearing, petitioner "waived his right to have a staff representative," "stated he did not request that witnesses appear on his behalf," and "indicated he did not have any documentary evidence to present and did not request any video evidence be reviewed." Id. at ¶11. Petitioner "acknowledged that he received his copy of the incident report and that he understood his rights before the DHO" and "did not raise any issues or concerns with the discipline process to that point." Id. at ¶12. Petitioner gave the following statement:

> "I had lock on top of locker. He was hostile and aggressive as I stood at door while he was searching. Ball showed me the bag and I was honest and told her it was not mine. I keep sweats in laundry bag outside of locker. It wasn't locked. I think this is because of another incident."

Id.

The DHO reviewed the incident report, photographs of the white substance, the NIK test kits used to test the substance, staff memoranda, and the chain of custody form for the substance. Id. at ¶ 13. "There is no record that Petitioner submitted any documentary evidence." Id. The DHO found petitioner committed the act as charged, outlining specific evidence to support the findings including petitioner's own statements. Id. at ¶¶13–14. The DHO noted, *inter alia*:

6

In making this decision the DHO gave the greater weight of evidence to the reporting officer written account that during a search of your cell, discovered in your secured locker was an unknown white substance inside of a Ziplock bag inside your sweatpants, the substance was taken to the lieutenant's office and tested with NIK test kit A, U, W resulting in a positive test for amphetamines, than to your claim that it isn't yours and your locker was secured. This decision was based upon the fact that the unknown substance was discovered inside of a Ziplock bag inside of sweatpants inside of your secured locker and the positive drug testing sequence of NIK test kit A, then U and finally W that tested positive for amphetamines.

You stated at the hearing you never received a copy of the incident. It's noted that Lieutenant Sierp delivered you a copy on November 9, 2023, at 0700 hours and investigated the incident report as well. The DHO also gave you a copy at the hearing as well.

Therefore, based on the evidence outlined above, the DHO finds the greater weight of the evidence to support you committed the prohibited act of Possession of Drugs, Code 113.

Id. at ¶15.

The DHO imposed as sanctions: "(1) disallowance of 41 days of good conduct time; (2) 20 days of disciplinary segregation; and (3) 6 months loss of commissary privileges." Id. at ¶16.

In support of the sanctions imposed, the DHO wrote:

The action/behavior on the part of any inmate to possess drugs threatens not only the health, safety, and welfare of himself, but that of all other inmates and staff within the institution. The mere presence of drugs in a correctional facility creates an environment conduce to violence. In the past, inmates under the influence of drugs have become violent towards others, which cannot and will not be tolerated. The sanctions imposed by the DHO were taken to let the inmate know that he, and he alone, will be always held responsible for his actions/behavior.

The DHO disallowed good time for this act to meet this inmate's sentence requirements, (PLRA). The sanctions imposed by the DHO were taken to let the inmate know that he, and he alone, will be always held responsible for his actions/behavior, to hold the inmate accountable for his actions in relation to having committed this prohibited act and to serve as a deterrent to prevent any future misconduct.

Id.

The DHO report was completed and delivered to petitioner on December 18 and 20, 2023, respectively. Id. at ¶18. The Amended DHO report was completed on December 28, 2023, and delivered on January 4, 2024. Id. at ¶19. The amended portion of section V states:

> In making this decision the DHO gave the greater weight of evidence to the reporting officer written account that during a search of your cell, discovered in your secured locker was an unknown white substance inside of a Ziplock bag inside your sweatpants, the substance was taken to the lieutenants office and tested with NIK test kit A, U, W resulting in a positive test for amphetamines, than to your claim that it isn't yours and your locker **wasn't secured. The reporting officer clearly states the locker was secured and they identified it as your locker due to identification card and medicine bottles with you information on the [sic]. You did not provide, nor did we find any evidence to indicate your locker was secured [sic] at the time of the search.** This decision was based upon the fact that the unknown substance was discovered inside of a Ziplock bag inside of sweatpants inside of your secured locker and the positive drug testing sequence of NIK test kit A, then U and finally W that tested positive for amphetamines.

Id. (additions bolded).

The record supports Forbes' declaration and the statement of facts. See Resp't App., Attach. 1, [D.E. 17-2] at 2 (disciplinary record); id., Attach. 2, [D.E. 17-3] at 2–4 (Nov. 8, 2023, Incident Report No. 3851203, with Lt. Siep's Nov. 9, 2023, investigation, and the UDC's Nov. 14, 2023, action on report), id. at 5–6 (petitioner-signed Nov. 14, 2023, "Notice of Disciplinary Hearing Before the DHO" and notice of "Inmate Rights at Discipline Hearing,"); id. at 7 (Nov. 15, 2023, Duties of Staff Representative form); id. at 8–11 (DHO Report); id. at 12–15 (Amended DHO Report); id. at 16 (petitioner-signed Nov. 30, 2023, "Staff Representative/Witness Waiver Form," "electing to waive [his] requested staff representative and proceed with the DHO hearing").

Although petitioner "declares that all his allegations" are "true and correct under penalty of perjury," see Pet. [D.E. 1] at 6, his claim that he had no prior written notice of the charges is wholly unsupported by the facts and record evidence, see Resp't App., Attach. 2, [D.E. 17-3] at 4

8

(Lt. Siep's notation petitioner was given incident report copy on Nov. 9, 2023); id. at 12 (Amended DHO Report finding Lt. Siep gave petitioner incident report copy on Nov. 9, 2023); see also Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003) (noting "neither '[u]nsupported speculation,' nor evidence that is 'merely colorable' or 'not significantly probative,' will suffice to defeat a motion for summary judgment" (internal citations omitted)).

Although petitioner claims a DHO's reliance on a NIK test without laboratory confirmation is insufficient evidence, several courts have persuasively found that inmates lack a constitutional right to additional laboratory testing to verify a positive drug test, and the court discerns no law, regulation, or BOP policy requiring such confirmation for disciplinary purposes. See Thompson v. Hall, No. 88-6525, 1989 WL 90668, at *2 (4th Cir. Aug. 14, 1989) (per curiam) (unpublished) (finding a single positive drug test, even without a 100% confidence factor, is "some evidence" to support disciplinary sanctions under Hill); Steele v. Breckon, No. 7:19CV466, 2020 WL 5807994, at *3 (W.D. Va. Sept. 29, 2020) (finding failure to confirm NIK test did not violate due process and a DHO's reliance on NIK test, with other evidence, was sufficient under Hill); see also Steffey v. Salazar, No. 3:19-CV-00093-JR, 2020 WL 2530084, at *4 (D. Or. Feb. 25, 2020) ("Numerous courts have held that a prisoner does not have a constitutional right to an additional drug test to verify the results of an initial positive test." (citing White v. Stansil, No. 2:15-cv-0242-EFB P (TEMP), 2016 WL 4009954, at *6 (E.D. Cal. July 25, 2016) (collecting cases))), report and recommendation adopted, No. 3:19-CV-00093-JR, 2020 WL 2529616 (D. Or. May 18, 2020); BOP Program Statement 6060.08, Urine Surveillance and Narcotic Identification, at 8 (updated Mar. 8, 2001), available at https://www.bop.gov/policy/progstat/6060_008.pdf (last visited Jan. 15, 2025) (providing, *inter alia*: "Each Captain will ensure the institution maintains a supply of

9

Narcotic Identification Kits"; "All lieutenants will be proficient in using the Narcotic Identification Kit and ordinarily are responsible for testing unknown substances"; and "While identification of such substances may be useful for various security purposes, it is often particularly important in the investigation of incident reports . . . ."); cf. id. at 5 (providing *urinalysis* is performed at an approved laboratory and initial positive test confirmed by second test before institution reporting).

After viewing the record and the reasonable inferences drawn therefrom in the light most favorable to petitioner, see Scott, 550 U.S. at 378, respondent has shown that petitioner received the due process required by Wolff, 418 U.S. at 563–71, and the DHO's disciplinary finding, which considered the NIK test and other evidence, is supported by "some evidence in the record," Hill, 472 U.S. at 454, whereas petitioner has not come forward with specific facts showing that there is a genuine issue for trial, see Anderson, 477 U.S. at 248–49; Matsushita, 475 U.S. at 587.

Finally, because reasonable jurists would not find the court's treatment of any of these claims debatable or wrong, and because none of the issues are adequate to deserve encouragement to proceed further, the court also denies a Certificate of Appealability. See 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

### Conclusion:

Accordingly, the court: GRANTS the motion for summary judgment [D.E. 14]; DENIES a Certificate of Appealability; and DIRECTS the clerk to close the case.

SO ORDERED this 27th day of January, 2025.

RICHARD E. MYERS II
Chief United States District Judge